IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

FERNANDEZ MARTINEZ on his own behalf
and on behalf of all others similarly situated,

    Plaintiff,

v.                                                  Case No.:

FED EX GROUND PACKAGE SYSTEM, INC.,
a Delaware corporation,

    Defendant.

---

## CLASS ACTION COMPLAINT FOR UNPAID WAGES

---

Plaintiff Fernandez Martinez, by and through undersigned counsel, individually and on behalf of all others similarly situated, files this Class Action Complaint for Unpaid Wages against FedEx Ground Package System, Inc. ("FedEx").

### STATEMENT OF THE CASE

1. The New Mexico Minimum Wage Act ("MWA") requires employers operating in New Mexico to pay their employees overtime premium wages for overtime hours worked. NMSA 1978 § 50-4-19 *et seq*. FedEx violated the MWA by failing to compensate employees at "time and one-half" their regular rate of pay for all overtime hours worked. This class action seeks to recover damages and liquidated damages to compensate all current and former New Mexico FedEx delivery drivers and runners who FedEx failed to pay per New Mexico law.

### PARTIES, JURISDICTION, AND VENUE

2. Plaintiff, an individual and resident of the State of New Mexico, was employed as a delivery driver and runner for FedEx from approximately 2016 to approximately February, 2020.

Plaintiff was eligible to receive overtime pay under the MWA since he worked hours over forty hours per week.

3. Defendant FedEx Ground Package System, Inc. is a corporation organized under the laws of the State of Delaware with its principal place of business in Moon Township, Pennsylvania. At all times relevant to this action, FedEx has conducted business in the State of New Mexico.

4. This Court has jurisdiction over the parties and subject matter of this action because, on information and belief, the putative class contains at least 100 Class Members, the parties are minimally diverse, and the amount in controversy exceeds $5,000,000 in the aggregate for the entire class, exclusive of interest and costs. 28 U.S.C. § 1332(d).

5. Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in New Mexico.

## FACTUAL BACKGROUND

6. As a central part of its business, FedEx operates package pickup and delivery services for customers throughout New Mexico and the United States.

7. FedEx employs hundreds of package delivery drivers and runners throughout New Mexico, including Plaintiff and others similarly situated, who: (a) work for FedEx through intermediaries called "independent service providers" ("ISPs"); and (b) have worked more than forty hours per week for FedEx and were paid a day rate, with no overtime premium payment for their overtime hours worked. These individuals are hereinafter referred to as "drivers and runners."

8. On information and belief, FedEx knows that nearly all of the drivers and runners under its control work uncompensated overtime hours in violation of the MWA. However, even if FedEx strategically "turned a blind eye" to these wage violations, it remains directly liable

because, as a controlling employer, it is responsible to ensure its employee-drivers/runners are paid in accordance with New Mexico law. In other words, New Mexico law does not permit FedEx to avoid its compliance obligations by inserting ISPs between it and its drivers/runners and requiring the ISPs to sign the drivers' and runners' paychecks.  Under New Mexico law, an "employer" for overtime purposes is a broadly defined term that includes individuals and entities far beyond the entity that signs paychecks.  Since FedEx is the employer of its drivers and runners, it is directly, individually and strictly liable for any and all unpaid wages and liquidated damages due to the drivers and runners– regardless of whether other persons or entities may also be liable.

9. Before instituting the ISP model of employing delivery drivers through intermediary entities, FedEx relied entirely on delivery drivers that it hired directly and treated as non-employee "independent contractors." After years of defending litigation challenging the employment status of these drivers – during which time various courts held that FedEx misclassified the drivers as independent contractors[1] – FedEx shifted to the ISP model in an effort to continue to avoid liability under the wage laws for its delivery drivers.

10. FedEx operates a statewide network of package handling terminals to serve its customers' package pick-up and delivery needs throughout New Mexico. FedEx advertises its delivery and pick up services and negotiates with its customers to provide the package pick-ups and deliveries performed by Plaintiff and other drivers and runners throughout New Mexico under the policies and procedures of FedEx.

---

[1] *See, e.g., Craig et al. v. FedEx Ground Package System, Inc.,* 335 P.3d 66 (Kan. 2014); *Alexander et al. v. FedEx Ground Package System, Inc.*, 765 F.3d 981 (9th Cir. 2014); *Slayman et al. v. FedEx Ground Package System, Inc.,* 765 F.3d 1033 (9th Cir. 2014). FedEx ultimately settled these and many similar cases in an MDL litigation styled *In re FedEx Ground Package System Employment Practices Litigation* and assigned to the Northern District of Indiana.

11. Plaintiff and other drivers and runners working for FedEx typically worked full-time and exclusively as FedEx drivers and runners, delivering FedEx's packages to FedEx customers while wearing FedEx uniforms and driving vehicles bearing FedEx's logos and color scheme.

12. Plaintiff and other drivers and runners worked out of FedEx-owned and operated terminals located in New Mexico, where FedEx managers oversee and manage the package delivery operations.

13. The services rendered by Plaintiff and other drivers and runners are integral to FedEx's business because FedEx's business is to pick up and deliver packages—exactly the work performed by Plaintiff and other drivers and runners.

14. Plaintiff and other drivers and runners are required to perform their delivery and pickup duties pursuant to FedEx's policies and procedures dictated to them both directly by FedEx managers and indirectly through FedEx ISPs. These policies include a strict schedule of pickup and delivery of its packages to comply with FedEx's same-day delivery requirements. Often, the drivers' and runners' schedules are directly dictated by the volume of packages that FedEx requires to be delivered within the service area that the drivers and runners are employed to service. This volume is based on the needs of FedEx's customers.

15. FedEx micromanages the manner in which Plaintiffs and other delivery drivers and runners working under ISPs perform their work. Some of this micromanaging is performed directly by FedEx managers, and some is performed by the ISPs, pursuant to standards and requirements established and enforced by FedEx. For example:

    a. FedEx requires that the delivery drivers and runners have specific equipment on their vehicles when they perform deliveries for FedEx;

b. FedEx requires the delivery drivers and runners to wear a uniform bearing FedEx's logos and color scheme and to maintain personal standards established by FedEx;

c. FedEx requires the delivery drivers and runners to place specific signage on their vehicles bearing FedEx's name and logo;

d. FedEx assigns the specific packages that the delivery drivers and runners must deliver and dictates when the packages must be delivered;

e. FedEx requires the drivers and runners to scan all assigned packages with a specific scanner designated by FedEx upon loading each morning and upon delivery;

f. FedEx requires the drivers and runners to begin and end each day at a designated terminal operated by FedEx;

g. Customer comments and complaints regarding the drivers' and runners' job performance are made directly to FedEx, who uses its own discretion on what action to take;

h. FedEx closely monitors the job performance of the drivers and runners, tracking whether each delivery is "successful" based on FedEx's own standards;

i. FedEx has the authority to require its ISPs to terminate the drivers and runners working under them if FedEx believes they should be terminated.

16. Drivers and runners frequently will work under different FedEx ISPs, or even directly for FedEx, and when this occurs, their job duties and the procedures they are required to follow do not differ in any material way.

17. FedEx drivers and runners, including Plaintiff, worked more than forty hours per week and were paid fixed "day rates" with no overtime compensation. FedEx keeps computer-based records of the hours worked by its drivers and runners.

18. For example, during the last three years of his employment, Plaintiff worked, on average, approximately 12-18 hours per day, six days per week and was not paid overtime wages for those hours over 40 that he worked each workweek. During the first year of his tenure, Plaintiff worked, on average, approximately 10-12 hours per day, six days per week, with no overtime pay.

19. Because FedEx is these drivers' and runners' employer, as defined by the MWA, it is liable to them for unpaid overtime wages and liquidated damages.

20. By creating a system in which FedEx employs delivery drivers and runners through intermediary FedEx ISPs, who generally have no other delivery business other than delivering to FedEx customers, FedEx has attempted to evade its responsibilities under the MWA.

## CLASS ACTION ALLEGATIONS

21. Plaintiff brings this action as a Fed. R. Civ. P. Rule 23 class action, on behalf of himself and on behalf of a Class for which Plaintiff seeks certification. Pending any modifications necessitated by discovery, Plaintiff preliminarily defines the class as follows:

ALL CURRENT OR FORMER NEW MEXICO FEDEX DRIVERS AND RUNNERS WHO WERE PAID DAY RATES WITHOUT OVERTIME COMPENSATION

22. This action is properly brought as a class action for the following reasons:

    a. The Class is so numerous that joinder of all Class Members is impracticable.

    b. Numerous questions of law and fact regarding the liability of FedEx are common to the Class and predominate over any individual issues which may exist.

    c. The claims asserted by Plaintiff are typical of the claims of Class Members and the Class is readily ascertainable from FedEx's own records. Plaintiff and Class Members were all paid under a similar compensation plan that denied them overtime premiums required by law. Plaintiff's legal theories are identical to those of Class Members. In particular, as described

above, Plaintiff contends that Defendant engaged in a course of conduct that deprived Plaintiff and Class Members of overtime pay, and in doing so, violated state law. Plaintiff's claims, and those of Class Members, are based on the same conduct and seek similar remedies, and therefore, satisfy the typicality requirement.

      d. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The individual claims at issue in this class action involve relatively small amounts and, for most or all Class Members, it would not be cost-effective to retain counsel to file an individual lawsuit. On information and belief, many Class Members do not have the financial means to hire counsel. The class action process would provide an opportunity that is otherwise not practicable or that is simply not available for many of the individual Class Members.

      e. Plaintiff will fairly and adequately protect the interests of Class Members. The interests of Class Members are coincident with, and not antagonistic to, those of Plaintiff. Their claims are identical and run solely against Defendant. Plaintiff and other Class Members do not have contractual relationships with each other; hence, they do not have any claims that would place them at odds with each other. In short, their interests are identical and not in conflict. Furthermore, Plaintiff is represented by experienced class action counsel.

## FIRST CLAIM FOR RELIEF
**(Violation of the MWA, NMSA 1978 § 50-4-19, *et seq*.)**

23. Plaintiff incorporates by reference all of the above paragraphs.

24. At all relevant times, FedEx has been, and continues to be, an "employer" within the meaning of the MWA.

25. At all relevant times, FedEx employed, and continues to employ, "employees", within the meaning of the MWA.

26. Plaintiff and all Class Members were employees of FedEx within the meaning of the MWA.

27. Because of the foregoing conduct, as alleged, FedEx has failed to pay wages due under the MWA, thereby violating, and continuing to violate, the MWA. These violations were committed knowingly, willfully and with reckless disregard of applicable law.

28. FedEx violated and continues to violate its drivers' and runners' right to be paid overtime wages as part of a continuing course of conduct.

29. As a result, Plaintiff and Class Members have been damaged in an amount to be determined at trial.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in favor of himself and Class Members and against FedEx as follows:

a. Determining that the action is properly maintained as a class action, certifying Plaintiff as the class representative, and appointing Plaintiff's counsel as counsel for Class Members;

b. Awarding Plaintiff and Class Members their compensatory damages, liquidated damages, service awards, attorneys' fees and litigation expenses as provided by law;

c. Awarding Plaintiff and Class Members their pre-judgment, post-judgment and moratory interest as provided by law; and

e. Awarding Plaintiff and Class Members such other and further relief as the Court deems just and proper.

Respectfully submitted this _____ day of October, 2020.

*s/ Brandt Milstein*
MILSTEIN LAW OFFICE
2400 Broadway, Suite B
Boulder, CO 80304
Phone: 303.440.8780
brandt@milsteinlawoffice.com

Brian D. Gonzales (pro hac vice forthcoming)
THE LAW OFFICES OF BRIAN D. GONZALES, PLLC
2580 East Harmony Road, Suite 201
Fort Collins, CO 80528
Phone: 970.214.0562
bgonzales@coloradowagelaw.com

Dustin T. Lujan (pro hac vice forthcoming)
LUJAN LAW OFFICE
1603 Capitol Avenue, Suite 310, #A559
Cheyenne, WY 82001
Phone: 970.999.4225
wyoadvocate@gmail.com

Peter Winebrake (pro hac vice forthcoming)
R. Andrew Santillo (pro hac vice forthcoming)
Mark J. Gottesfeld (pro hac vice forthcoming)
WINEBRAKE & SANTILLO, LLC
715 Twining Road, Suite 211
Dresher, Pennsylvania 19025
Phone: 215.884.2491
pwinebrake@winebrakelaw.com

Shannon Liss-Riordan (pro hac vice forthcoming)
Michelle Cassorla (pro hac vice forthcoming)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, Massachusetts 02116
Phone: 617.994.5800
sliss@llrlaw.com
mcassorla@llrlaw.com

*Attorneys for Plaintiff*