IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

FERNANDEZ MARTINEZ and SHAWNEE
BARRETT, on behalf of themselves and all others
similarly situated,

        Plaintiffs,

        v.                                         Civ. No. 20-1052 SCY/LF

FEDEX GROUND PACKAGE SYSTEM, INC.,

        Defendant.

**MEMORANDUM OPINION AND ORDER
DENYING MOTION FOR SUMMARY JUDGMENT**

        Plaintiffs Fernandez Martinez and Shawnee Barrett bring a putative class action suit

against Defendant FedEx Ground Package System, Inc., alleging violations of the New Mexico

Minimum Wage Act ("NMMWA"). In pertinent part, the complaint alleges that Plaintiffs and a

class of similarly situated employees worked for independent service providers to deliver

packages on behalf of Defendant. Plaintiffs and the putative class members allege they were paid

by the day, rather than by the hour or by package delivered, and regularly worked in excess of 40

hours per week with no premium payments for overtime hours.

        Defendant moves for summary judgment on Plaintiff Fernandez Martinez's claims,

arguing that Plaintiff Martinez did not work more than 40 hours a workweek in New Mexico,

and that his pay was fixed per unit rather than measure of time, i.e., he was paid per route rather

than per day. Defendant contends that the NMMWA does not apply to these circumstances. The

Court rejects Defendant's argument that the NMMWA categorically never applies to hours

worked out of state and, therefore, declines to grant Defendant's motion for summary judgment

on grounds that the NMMWA could not apply to Plaintiff Martinez. Further, Defendant has not

demonstrated for purposes of summary judgment that Plaintiff's pay structure was "flat rate" compensation. Therefore, the Court denies FedEx Ground Package System, Inc.'s Motion For Summary Judgment, Doc. 54.

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other words, a dispute is genuine "if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way," and it is material "if under the substantive law it is essential to the proper disposition of the claim." *Becker v. Bateman*, 709 F.3d 1019, 1022 (10th Cir. 2013) (internal quotation marks omitted). In reviewing a motion for summary judgment, the Court views the evidence and all reasonable inferences therefrom in the light most favorable to the non-moving party. *S.E.C. v. Thompson*, 732 F.3d 1151, 1156-57 (10th Cir. 2013) (internal quotation marks omitted). Initially, the party seeking summary judgment has the burden of showing that there is no genuine dispute as to any material fact. *See Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir. 1993). Once the moving party meets its burden, the non-moving party must show that genuine issues remain for trial. *Id.*

## BACKGROUND

Plaintiff Fernandez Martinez filed this putative Class Action Complaint for Unpaid Wages in federal court on October 12, 2020. Doc. 1. The Court recently permitted Plaintiff to amend the complaint to add Shawnee Barrett as a named class representative. Doc. 71. The

current motion is directed only at Plaintiff Martinez's claims; therefore, and all references to "Plaintiff" hereinafter are to Plaintiff Martinez only. Doc. 54.

The First Amended Class Action Complaint For Unpaid Wages alleges that Defendant violated the NMMWA by failing to pay premium wages for overtime hours. Doc. 72. Specifically, it alleges that FedEx drivers and runners are paid a "day rate" whereby they earn the same amount of money regardless of how many hours they work in a day. *Id.* ¶¶ 8, 18-20. This results in employees working more than forty hours per week with no premium payment for their overtime hours. *Id.*

The complaint preliminarily defines the class as "all current or former New Mexico FedEx drivers and runners who were paid day rates without overtime compensation." *Id.* ¶ 23. The complaint brings a single claim for relief under the MMWA, NMSA 1978 § 50-4-19. *Id.* ¶¶ 25-31. It invokes jurisdiction under the federal Class Action Fairness Act, 28 U.S.C. § 1332(d), because the putative class contains at least 100 members, the parties are minimally diverse, and the amount in controversy exceeds $5,000,000 in the aggregate for the class, exclusive of interest and costs. *Id.* ¶ 5. Previously, the Court denied Defendant's motion to dismiss, finding that a "day rate" pay schedule does not qualify for the "flat rate" exemption under the NMMWA. Doc. 24.

Defendant makes two arguments in support of its motion for summary judgment. First, Defendant asserts that the NMMWA does not cover Plaintiff's employment because Plaintiff worked most of his hours in Colorado, not New Mexico. Doc. 54-1 at 6, 12-18. (memorandum in support).[1] Plaintiff does not dispute that he worked most of his hours in Colorado. Nor does he

---

[1] The native pagination in the parties' briefs differs from the pagination in the CM ECF header. The Court's citations are to the page numbers in the CM ECF header at the top of the page, not the native pagination at the bottom.

dispute evidence his employer (J&A Deliveries) provides about his pay. Doc. 61 at 3-5. Instead, Plaintiff argues that the NMMWA nonetheless applies to him because his employment was based in New Mexico: he started and ended his workday in the state and only left temporarily in the course of the workday. *Id.* at 15-22.

Second, Defendant asserts that Plaintiff and his co-workers were paid a fixed amount based on the route they drove. Because not every route required the same amount of work, different routes received different rates of pay per day. *Id.* at 7-8. Therefore, Defendant argues, Plaintiff was paid a fixed, flat "route rate" for which the NMMWA does not require premium pay. *Id.* at 19-21. Plaintiff counters that his routes were never "fixed"—they varied considerably by volume of packages and length of time required to complete the route. *Id.* at 22-25. Thus, Plaintiff argues, the "route rate" is not a flat rate system of compensation.

For the reasons that follow, the Court rejects Defendant's arguments at this stage.

## DISCUSSION

The Court will address Defendant's two grounds for summary judgment in turn. The specific facts needed to resolve each issue differ from each other, so the Court will discuss the undisputed material facts related to each issue separately.

## I.   NMMWA Geographic Restriction

### A.   Undisputed Facts

Plaintiff was employed by J&A Deliveries, an "independent service provider" who contracts with FedEx Ground to provide "last mile" pickup and delivery of packages to-and-from FedEx Ground's station in Farmington, New Mexico. UMFs 1 & 2.[2] At most, Plaintiff worked

---

[2] The references to "UMF" are to Defendant's statement of Undisputed Material Facts ("UMF"), Doc. 54-1 at 2-6, and are undisputed unless noted otherwise. The Court draws all reasonable inferences in favor of the non-moving party, Plaintiff.

six days a week. UMF 5. Plaintiff typically was at or near the Farmington Station in New

Mexico for one to three hours in the morning. UMF 12. Plaintiff spent 20 minutes driving from

the Farmington Station in New Mexico to the Colorado border each morning. UMF 14. Plaintiff

spent 30 minutes driving from the Colorado border to the Farmington Station in New Mexico

toward the end of his workday. UMF 15. Plaintiff typically spent around 15 to 30 minutes at or

near the Farmington Station in New Mexico at the end of his workday. UMF 17.

Plaintiff worked less than 40 hours in New Mexico each week. UMF 20. He spent more

than half of his workday in Colorado. UMF 21. Sometimes, toward the end of Plaintiff's

workday, he would drive directly home from Colorado to his home in New Mexico without

stopping at the Farmington Station. UMF 22. Plaintiff's pickups and deliveries were almost all in

Colorado. UMF 24.

In total, Plaintiff typically or often worked over 40 hours a week. AMF 40.[3] Plaintiff

began each workday at the FedEx Farmington terminal and ended most workdays there. AMF

41. At all relevant times, Plaintiff resided in New Mexico. AMF 45.

B.    Discussion

The NMMWA requires employers to pay premium rates for overtime hours worked by

employees (i.e., those hours in excess of 40 hours per week). NMSA § 50-4-22(E). The Act, on

its face, has no geographical restriction. However, Defendant moves for summary judgment

arguing that the statute is presumed not to have extraterritorial effect and that previous decisions

from this District have confirmed it applies only to employment in New Mexico. Because

Plaintiff never worked more than 40 hours a week exclusively inside the state of New Mexico,

---

[3] The references to "AMF" are to Plaintiff's "Additional Material Facts," Doc. 61 at 10-11, and
are undisputed to the extent set forth here.

Defendant argues it is entitled to summary judgment on the basis that the overtime provision of the NMMWA does not apply to him.

To make its argument, Defendant invokes a general presumption against extraterritoriality and cites out-of-state cases. Doc. 54-1 at 11. There appear to be no state-court cases discussing or establishing such a presumption in this state. To be sure, New Mexico has recognized federal constitutional limits on the extraterritorial application of its laws. *Pharm. Mfrs. Ass'n v. New Mexico Bd. of Pharmacy*, 1974-NMCA-038, ¶ 11, 525 P.2d 931, 936. But Defendant does not make any constitutional arguments against an interpretation of the statute that reaches hours worked in other states.[4] And, in dicta, the New Mexico Court of Appeals observed that "an hourly minimum wage is of obvious concern to workers across the state and it applies to *all workers in the state*." *New Mexicans for Free Enter. v. The City of Santa Fe*, 2006-NMCA-007, ¶ 18, 126 P.3d 1149, 1159 (emphasis added). The New Mexico Court of Appeal, however, did not indicate whether "all workers in the state" meant the NMMWA only applies to New Mexico workers when they are *physically* "in the state" or, instead, to all workers who are *residents* "in the state." The Court does not find *New Mexicans for Free Enterprise* particularly probative as applied to a worker who *is* in the state but leaves the state temporarily during the day in the course of his employment.

In sum, Defendant has not established that, as a matter of law, the NMMWA cannot apply to hours a New Mexico resident works outside of New Mexico during his workday, when

---

[4] Defendant alludes in a footnote to a possible such argument, but does not develop it. Doc. 66 at 8 n.6. This is not sufficient to raise an argument for the Court's consideration.

the resident works for a New Mexico company and starts and finishes his work each day in New Mexico.[5]

This, however, is only the start of Defendant's argument. Even if no constitutional or other bar exists to prevent the NMMWA from reaching work performed outside of New Mexico, Defendant argues the NMMWA nonetheless applies to "work done in New Mexico, but does not apply to work performed in other states." Doc. 54-1 at 12. In support of this argument, Defendant relies on a trio of federal district court cases from the District of New Mexico that dealt with employees based outside the state who performed some work in New Mexico. These cases held that New Mexico law applies to work performed in excess of 40 hours a week in New Mexico, even if the employee also works in other states. These cases, Defendant argues, demonstrates that, in New Mexico, the situs of the work performed, not the home state where the worker is based, is used to determine whether the NMMWA applies. The Court reviews each of these three cases in turn.

First, in *Jimenez v. Packers Plus Energy Servs.(USA) Inc.*, the plaintiff employee resided in Texas, the defendant employer's corporate headquarters were in Texas, and the plaintiff was based out of a Texas office. No. 15cv802 WJ/KBM, 2016 WL 7670352, at *1, *3 (D.N.M. Apr.

---

[5] In reply, Defendant cites an internal handbook from the labor enforcement division of the New Mexico Workforce Solutions Department to argue that the division "has jurisdiction only over a portion of the wage claim: for the time periods the employee worked in New Mexico." Doc. 66 at 5; *see* Doc. 66-2 at 3. Whether a New Mexico investigator has jurisdiction to conduct an investigation in another state, however, is a different question than whether the NMMWA can be applied to New Mexico workers who spend part of their day working out of state. Further, a question exists as to the impact an internal agency handbook should have on the Court's interpretation of a state statute. Because Defendant did not raise its internal handbook argument in its opening brief, Plaintiff has not had an opportunity to respond to the argument and these issues have not been fleshed out. Therefore, the Court does not consider this argument. *See Reedy v. Werholtz*, 660 F.3d 1270, 1274 (10th Cir. 2011) ("[T]he general rule in this circuit is that a party waives issues and arguments raised for the first time in a reply brief.") (cleaned up).

29, 2016). "Plaintiff performed some work (20%) in New Mexico, performed more work (30%) in Oklahoma, and performed at least half of his work (50%) in Texas." *Id.* at *3.

The court granted the defendant's motion to transfer venue to Texas. *Id.* at *1. One of the factors in the venue-transfer analysis is "the possibility of the existence of questions arising in the area of conflict of laws." *Id.* at *2. The court found "this to be a neutral factor, as there do[es] not appear to be a conflict of laws issue involved in the case." *Id.* at *5. The court rejected the defendant's argument that Texas law would apply to the entire dispute, holding instead that "the New Mexico Minimum Wage Act will apply to Plaintiff's work conducted while in New Mexico. The Texas Minimum Wage Act would only apply to Plaintiff's work conducted while in Texas." *Id.* at *5. Although not specifically discussed, it appears that the plaintiff in *Jimenez* worked entire days or weeks outside the state of Texas, rather than moving temporarily into New Mexico during the course of his workday. *Cf. id.* at *1 ("As a Field Operator, Mr. Jimenez would assist the customers' crews in assembling and using the drilling tools, and remain on the jobsite for several days to assist in the operation of the equipment and to answer questions."). The court, however, did not address the situation where a worker splits work between two states in the same day.

The next case, *Rodriguez v. Peak Pressure Control, L.L.C.*, presents a similar situation. There, a New Mexico resident, whose employment was based out of an office in Texas, brought a putative class action against his employer, a Texas company. No. 17cv576 JCH/JFR, 2020 WL 3000414, at *1 (D.N.M. June 4, 2020). The plaintiff performed some work in Texas and some in New Mexico. *Id.* at *3. The defendants argued against application of the NMMWA to the plaintiff's work in New Mexico, asserting "the [NM]MWA does not apply extraterritorially to

out-of-state employers" and that the Act "excludes from overtime laws in-state work done by an employee for out-of-state employers." *Id.* at *2-3.

The court disagreed. Examining the text of the NMMWA, it observed, "[t]he statute uses no geographic indicators and Defendants have pointed to no portion of the Act that excludes from overtime laws in-state work done by an employee for out-of-state employers." *Id.* at *3. "The [NM]MWA instead appears to be concerned with whether the employment is done in New Mexico, which has likewise been the focal point for federal courts interpreting state labor laws. Accordingly, persuasive authority on the issue suggests that the [NM]MWA applies to an individual's work done in New Mexico, without reference to an employer's residence." *Id.* (citations omitted). "Given that Mr. Rodriguez resides in New Mexico and worked partially for Defendants in New Mexico, the Court concludes that he is afforded protection by the [NM]MWA for alleged overtime work done in New Mexico." *Id.*

Defendant draws heavily on this court's determination that "a statutory interpretation of New Mexico's pertinent wage provisions shows that they apply to *employment done in New Mexico*, without reference to an employer's or employee's place of residence." *Id.* at *2 (emphasis added). The converse of a finding that the NMMWA applies to employment done in New Mexico, without reference to an employer's or employee's place of residence, is that when *employment is done outside of New Mexico*, that foreign state's pertinent wage provisions should apply, regardless of whether the employer and employee are based in New Mexico. Defendant's argument has logical appeal. If Plaintiff worked exclusively in Colorado for more than 40 hours a week the Court's decision would be easy: Colorado's minimum wage laws, not New Mexico's, should apply.

No indication exists, however, that *Rodriguez* dealt with the situation where an employee split time each day between two states, starting and finishing the day in the state where the employee worked fewer hours. The question presented in *Rodriguez* was whether the NMMWA would apply to "work done in excess of 40 hours per work week in New Mexico." *Id.* at *2. Ultimately, the court in *Rodriguez* certified a class that it defined in part as "Defendants' [employees] . . . who worked over 40 hours in at least one workweek in New Mexico over the past three years." *Rodriguez v. Peak Pressure Control, L.L.C.*, No. 17cv576, 2020 WL 3000415, at *18 (D.N.M. June 4, 2020). Granted, this class definition could apply to workers who, during the course of a week, started their workday outside of New Mexico, traveled to New Mexico, worked a long day in New Mexico, and then traveled back to the employer's out-of-state office. Such workers would be similarly situated to Plaintiff. Although these hypothetical workers in *Rodriguez* would be based in another state and come to New Mexico to perform part of their work, rather than being based in New Mexico and going to another state to perform part of their work, the same governing principal should apply. Despite what is theoretically possible under the class definition used in *Rodriguez*, however, no indication exists that *Rodriguez* actually involved workers who split their days between states. Instead, what we do know about *Rodriguez* is that it provides no analysis related to the situation where an employee splits work between two states each day.

Finally, completing the trio of Defendant's New Mexico cases, *Jackson v. Powersat Communications (USA) LP* drew on both *Jimenez* and *Rodriguez*, and stated, "a state's labor laws do not reach work done by non-residents mainly or entirely outside of that state." No. 20cv486 KRS/GJF, 2021 WL 1026737, at *5 (D.N.M. Mar. 17, 2021). The *Jackson* plaintiffs were not residents of New Mexico and worked for the defendant, who was based out of Midland,

Texas. *Id.* at *1. The plaintiffs argued that they worked overtime during weeks where they performed some work for the defendants in New Mexico. *Id.* at *5. But the plaintiffs did not assert that they ever worked more than forty hours in one week in New Mexico. *Id.* The *Jackson* court concluded, "Because Plaintiffs do not allege they worked in excess of forty hours in New Mexico, they are not residents of New Mexico, and they conducted the majority of their work outside of New Mexico," the [NM]MWA does not apply. *Id.* at *5.

To the extent the plaintiffs in *Jackson* split their time between New Mexico and another state on any given day,[6] the logical inference based on the out-of-state residency of both employer and employees, is that the plaintiffs' day started and ended outside of New Mexico, rather than within New Mexico. Given the NMMWA did not apply in *Jackson*, it favors a conclusion that, when an employee splits work between two states during the course of a day, the minimum wage laws of the foreign state (New Mexico in *Jackson*) do not apply. Applying this same rationale to the present facts leads to an unfavorable conclusion for Defendant: Colorado's minimum wage laws (Colorado being the foreign state in the present case) would not apply to Plaintiff and so, absent application of the NMMWA, neither state's minimum wage law would apply to an employee (a New Mexico resident working for a New Mexico company) who worked in both states. Although New Mexico and Colorado may have different minimum wage laws that would affect Plaintiff differently, it would be anomalous for neither to govern Plaintiff's case.

---

[6]Although the *Jackson* opinion does not explicitly answer this question, given the long miles the plaintiffs had to drive between job sites, this is a possibility. 2021 WL 1026737, at *3 (providing example of 92.7 miles between job sites and citing plaintiff's testimony of having to drive, on occasion "for four (4) hours between rigs in the course of my daily job duties").

The Court, however, places little weight on *Jackson*. First, *Jackson* does not say whether the plaintiffs split time each day between two states. Without more information, the Court is reluctant to find that both *Jackson* and the present case involved plaintiffs who split their workdays between New Mexico and another state. Moreover, like *Rodriguez* and *Jimenez*, what is clear about *Jackson* is that it provides no analysis about whether one state's minimum wage laws reach over another state's border when a worker splits time between two states each day. The absence of such analysis countenances against applying the *Jackson* court's general statement that "a state's labor laws do not reach work done by non-residents mainly or entirely outside of that state" to a context, like the one in the present case, that the *Jackson* opinion did not address.

Further, the only way the NMMWA could apply in *Jackson* would be for the court to accept the rather specious argument that the NMMWA should apply to work a non-New Mexico resident based out-of-state performed out-of-state for an out-of-state company. This is because the plaintiffs in *Jackson* never worked more than 40-hours per week in New Mexico and so the only way to trigger the NMMWA would be to apply it to this all-out-of-state scenario. Not surprisingly, under these circumstances the *Jackson* court limited the potential application of the NMMWA to hours worked in New Mexico and, because the New Mexico hours worked per week numbered less than 40, easily found that the NMMWA was not triggered. These circumstances provide little guidance to resolving the present issue of whether the NMMWA should apply to a New Mexico resident who works more than 40 hours per week for a New Mexico company and whose daily assignment requires him to split his time between New Mexico and another state.

In sum, *Jimenez*, *Rodriguez*, and *Jackson* do support the idea that when a New Mexico resident exclusively works in another state for more than 40 hours in a week, the minimum wage laws of the state where the work is performed should control. However, the Court agrees with Plaintiff that these cases do not answer the question presented here: whether New Mexico's minimum wage law applies when an employee is based in New Mexico starts and ends his workday in New Mexico, splits work during the day between New Mexico and another state, and works in excess of 40 hours a week with combined in-state and out-of-state hours.

Plaintiff argues that a judge in the United States District Court for the District of Colorado answered this very question with respect to the NMMWA. In *Wagner v. Air Methods Corp.*, the plaintiffs were flight paramedics and flight nurses employed in Michigan, New Mexico, and Illinois. No. 19cv484, 2020 WL 7711331, at *1 (D. Colo. Dec. 29, 2020). The defendant Air Methods Corporation ("AMC") provided air ambulance services throughout the United States. *Id.* Flight paramedics and flight nurses were scheduled to work 24-hour shifts. *Id.* AMC designated eight hours of each 24-hour shift as sleep time, although the employees were required to remain on base and ready to board a helicopter or plane on five minutes notice if necessary. *Id.*

The plaintiffs challenged overtime pay under the law of each respective state and asked the court to certify a class action. *Id.* AMC opposed class certification and argued the claims were not typical of the class because the New Mexico and Illinois-based flight paramedics and nurses performed part of their work outside their respective states. *Id.* at *2. "Depending on such factors as the location of an employee's base, the location of the patient, the care required, and the location of an appropriate hospital, it could be that a flight to a patient or a hospital would cross a state line." *Id.* If the class representatives spent a substantial portion of their flight time

across the border from their base station, AMC argued, they might not have enough hours within their base state to qualify for overtime under the laws of the base state. *Id.* at *3.

The *Wagner* court turned to the decision in *Bostain v. Food Express, Inc*., 153 P.3d 846 (Wa. 2007) (en banc), for guidance. In *Bostain*, the Supreme Court of Washington considered whether Washington's Minimum Wage Act applied to all hours worked by an interstate truck driver based in Vancouver, Washington even though he did not work more than 40 hours a week within the state of Washington. 153 P.3d at 849. Approximately 37% of his driving time was in Washington, and 63% was out of state. *Id.* The Washington overtime statute did not expressly restrict its application to hours worked within the state. *Id.* at 851. Considering this text and the statute's remedial purpose, the court held that "all hours of work must be considered, whether worked within this state or not, when determining overtime due a Washington employee." *Id.* at 851-52.

The *Wagner* court found this decision persuasive as applied to the similar overtime laws of New Mexico and Illinois. 2020 WL 7711331, at *3. It reasoned:

> In a business such as an air ambulance business, where cross-border flights might be inevitable, it makes sense for the law of the employee's base to apply, just as the tax laws of the employee's base are apparently applied by AMC to its employees. Otherwise, the remedial purpose of the overtime laws—to protect the rights of employees—would be frustrated. Air ambulance employees based in geographic areas where their flights frequently cross state borders and whose hours in either or both states alone would not exceed 40 in a week would lose the protections that air ambulance employees who rarely or never cross state lines have, even though their work weeks would be the same. AMC's argument, seemingly created in the effort to avoid class certification, is not persuasive. If a state's overtime statute requires that overtime be paid if the employee works more than 40 hours in a week and does not expressly limit its application to hours worked within the state's boundaries, then this Court will apply the statute to all hours worked.

*Id.* Plaintiff argues that *Wagner* is more on point than the cases Defendant cites and, accordingly, should be the case the Court follows.

Defendant objects that, rather than clarifying an open question, *Wagner* actively conflicts with the three New Mexico decisions, and this Court should therefore not follow it. Doc. 66 at 6. "[I]n *Jackson*, *Jimenez*, and *Rodriguez*, this Court applied New Mexico law to employees with Texas 'bases,'" Defendant reasons, and therefore *Wagner* contradicted this holding by stating that the law of the employee's base supplies the applicable overtime law. *Id.*; *see also id.* at 9 (pointing out that the New Mexico courts did not hold that Texas law "travelled" with the employees based in Texas when they went to work in New Mexico).

The Court disagrees that these cases cannot be reconciled. Read together, they support a conclusion that the NMMWA covers New Mexico residents "based" in New Mexico who leave the state temporarily during the course of the workday. It also covers employees who work more than 40 hours in a single week exclusively in New Mexico, regardless of where they are based. Defendant is likely correct, however, that under the New Mexico cases the NMMWA does not cover New Mexico-based employees during the time they exclusively work more than 40 hours in a single week outside the state of New Mexico if they do not start and end their workday in New Mexico.

Not only does this interpretation reconcile the cases Defendant argues are contradictory, it also furthers the remedial intent of the NMMWA. *Cf. N.M. Dep't of Labor v. Echostar Commc'ns Corp.*, 2006-NMCA-047, ¶ 7, 134 P.3d 780, 782 (New Mexico cases "recognize that the Act is a statute with a remedial purpose and that it must be construed liberally to accomplish that purpose"). Under Defendant's interpretation, a company could structure its employees' schedules so that they work part of each day in New Mexico and part of each day in Colorado, for a total of 35 hours a week in each state (for a total 70-hour work week), and pay no overtime. Yet, a worker who spends 50 hours a week performing the same job without leaving the state

15

would receive overtime. The actions of an employer in the former situation would clearly frustrate the goals of the NMMWA and create an anomalous pay structure between its employees who need to cross the state border to deliver their packages and those who do not.

The Court agrees with Defendant that the trio of New Mexico cases did not explicitly hold that "spending days or weeks" at a time in a state, versus temporary travel, was relevant to the analysis. Doc. 66 at 8. But the question of "full days or weeks" versus daily travel between states was not presented in those cases. The three cases had no occasion to remark on the distinction and so little can be drawn from the absence of discussion on the topic. Looking outside New Mexico, Defendant asserts that "most courts do not apply state labor laws in other states," and cites several cases that say in-state labor laws do not apply to employment based out-of-state with occasional visits to the state. Doc. 66 at 11. But none of these cases address the situation of the employee who leaves the state only temporarily during the course of the day.

For his part, Plaintiff argues that the Court should follow *Wagner* and *Bostain* because the public policy of New Mexico wage law is broadly in favor of protection. Doc. 61 at 18-20. The Court agrees. The policy of the NMMWA is "to establish minimum wage and overtime compensation standards for all workers" and to protect "workers against the unfair competition of wage and hour standards which do not provide adequate standards of living." NMSA § 50-4-19. "The primary goal in interpreting a statute is to give effect to the legislature's intent." *N.M. Dep't of Lab. v. Echostar Commc'ns Corp.*, 2006-NMCA-047, ¶ 6, 134 P.3d 780, 782. "[T]he intent of the statute is to adequately compensate for overtime, to discourage overtime, and to encourage the employment of more workers." *Id.* ¶ 12.

The NMMWA's remedial purpose must be liberally construed to implement that purpose, and any exception will be strictly construed. *Id.* ¶ 7; *N.M. Dep't of Labor v. A.C. Electric, Inc.*,

1998-NMCA-141, ¶ 13, 965 P.2d 363, 366. "In light of these purposes, it makes little sense to construe the statute to lessen the financial impact on employers the more hours that employees are required to work." *Echostar*, 2006-NMCA-047, ¶ 7. "Construing a similar statute, one of our sister states has noted that these acts' 'purposes are to compensate those who labored in excess of the statutory maximum number of hours for the wear and tear of extra work and to spread employment through inducing employers to shorten hours because of the pressure of extra cost.'" *Id.* (quoting *Janes v. Otis Eng'g Corp.*, 757 P.2d 50, 53 (Alaska 1988)). "Another jurisdiction with a similar statute has noted that 'premium pay for overtime is the primary device for enforcing limitations on the maximum hours of work.'" *Id.* (quoting *Skyline Homes, Inc. v. Dep't of Indus. Relations*, 165 Cal. App. 3d 239, 211 Cal. Rptr. 792, 798 (Ct. App. 1985), *overruled on other grounds by Tidewater Marine W., Inc. v. Bradshaw*, 14 Cal.4th 557, 59 Cal. Rptr. 2d 186, 196, 927 P.2d 296 (1996)) (alterations omitted).

Like the New Mexico Court of Appeals in *Echostar*, this Court draws guidance from sister states with similar statutes and similar public policies. In addition to *Wagner* and *Bostain*, discussed above, decisions in California have addressed the question of a worker who is based in California and leaves the state only temporarily during the course of the workday.[7] In *Sullivan v.*

---

[7] Defendant's citation to California cases only emphasizes this point. Doc. 66 at 12. In *Sarviss v. Gen. Dynamics Info. Tech., Inc.*, the court held that California overtime laws did not apply to an employee who "indisputably spent the vast majority of his employment working *outside* of California—and, in fact, *relocated* to different states and a foreign country while outside of California"—"[a]s opposed to traveling temporarily outside the state during the course of the normal workday but returning to California at the end of the day." 663 F. Supp. 2d 883, 900 & n.17 (C.D. Cal. 2009) (cleaned up). In *Priyanto v. M/S AMSTERDAM*, the court similarly found that California laws did not follow workers aboard a cruise ship that sailed to and from California ports but left the state for seven days at a time. No. 07cv3811, 2009 WL 175739, at *1, 6-8 (C.D. Cal. Jan. 23, 2009). This case also explicitly noted the California Supreme Court's language distinguishing this from the case of "California residents working for a California employer travel temporarily outside the state during the course of the normal workday but return to California at the end of the day." *Id.* at *6.

*Oracle Corp.*, the California Supreme Court answered a certified question from the Ninth Circuit regarding whether California overtime law applied to non-resident employees of a California corporation who worked primarily in their home states of Colorado and Arizona, but also worked in California (and several other states) for "entire days or weeks" at a time. 254 P.3d 237, 243 (Cal. 2011). During the relevant time period, one plaintiff worked in California approximately 1.8%, another 6.7%, and a third 10% of the time. *Id.* But when the plaintiffs worked in California, they did so for "entire days or weeks." *Id. Sullivan* held that California law applied to all work performed for days or weeks at a time within the state's borders, regardless of whether it was performed by residents or non-residents. *Id.* at 242-43. In this sense, *Sullivan* mirrors *Jimenez and Rodriguez*, which apply, regardless of residency status, the NMMWA to employees based in Texas who travel to New Mexico for entire days or weeks and whose hours in New Mexico exceed 40 in one week.

In so holding, the California Supreme Court made several observations that are relevant to this case. First, the court noted that California's overtime laws "speak broadly" to "regulate all nonexempt overtime work within its borders." *Id.* at 241. Yet *Sullivan* explicitly distinguished employment within or outside California for "days or weeks at a time" from the situation of "California resident employees of California employers who leave the state temporarily during the course of the normal workday." 254 P.3d at 242-43 (internal alterations and quotation marks omitted). Work beyond its borders that was part of a normal workday created no barrier to California minimum wage laws following employees who depart only temporarily. *See id.* (citing *Tidewater Marine Western, Inc. v. Bradshaw*, 927 P.2d 296, 309 (Cal. 1996)). Correspondingly, "California law might not apply to nonresident employees of out-of-state businesses who enter California temporarily during the course of the workday." *Id.* at 243 (emphasis and internal

18

quotation marks omitted). The Ninth Circuit subsequently applied these principles to employment situations analogous to the present case. *Bernstein v. Virgin Am., Inc.*, 3 F.4th 1127, 1133, 1137-38 (9th Cir. 2021) (flight attendants based out of California who performed "approximately 31.5% of their time working within California's borders" were covered by California overtime laws, to include their temporary out-of-state travel).

To be sure, as Defendant argues here (Doc. 66 at 6), *Sullivan* noted that this interpretation could create a conflict-of-laws situation. 254 P.3d at 243. The same holds true in the present case. Hypothetically, for instance, if Plaintiff worked more than a 40-hour week in Colorado, the Court could be confronted with a choice-of-law issue. In such a situation, the Court would have to consult the forum state's conflict-of-laws rules to determine which law to apply. *Ferrell v. Allstate Ins. Co.*, 2008-NMSC-042, ¶ 16, 188 P.3d 1156, 1164 (explaining this forum's conflict-of-law principles). The Court would not, however, in an effort to avoid having to engage in a conflict-of-law analysis, interpret the NMMWA differently than it predicts the New Mexico Supreme Court would.

Defendant asserts that Colorado would not provide Plaintiff any overtime protections because "Colorado exempts 'drivers who transport goods in interstate commerce' from overtime pay requirements." Doc. 66 at 5. The Court does not venture an opinion as to whether Colorado wage laws would cover Plaintiff and, if they did, whether this exemption would apply to him, or ultimately whether New Mexico or Colorado law would prevail in a conflict-of-laws analysis. The Court also does not reach any conclusions about whether New Mexico law would cover out-of-state work that consists of entire days at a time but less than a full week (the parties have not briefed these questions). Instead, the Court simply rejects Defendant's contention that the NMMWA cannot apply when a New Mexico resident works for a New Mexico company, splits

work each day between New Mexico and another state, starts and finishes his work each day in

New Mexico, and works more than 40 hours per week when his work in both states is combined.

The Court predicts that the New Mexico Supreme Court, like the District of Colorado and the

supreme courts of Washington and California, would find the position Defendant takes to be

contrary to the public policy of the governing overtime statute and reject it. For purposes of the

present motion, the Court confines its holding narrowly to a rejection of Defendant's argument

that the NMMWA categorically never applies to hours worked out of state.

## II.     Flat Rate Exemption

### A.     Undisputed Facts

Plaintiff was employed as a pickup and delivery driver by J&A Deliveries, which issued

him paychecks and W-2s, from January 2016 to March 2020. UMF 1.[8] J&A Deliveries decided

which route Plaintiff drove, which vehicle he drove, and Plaintiff's compensation. UMF 4.[9] Josh

Strong is the owner and Authorized Officer of J&A Deliveries. UMF 3.

Josh Strong directed Plaintiff to arrive to the station and start work at either 7:00 a.m. or

7:30 a.m. and specifically told Plaintiff not to arrive earlier. UMF 6. Plaintiff continued to arrive

for work earlier despite his employer telling him not to. UMF 7. Plaintiff contends that he had to

arrive for work early "in order to complete the work that was assigned from FedEx." Doc. 61 at

6. Plaintiff testified that if he didn't arrive to work early and double-check all the packages

loaded into his truck by the package handlers, then completing his route would take much longer

---

[8] As mentioned above, the references to "UMF" are to Defendant's statement of Undisputed
Material Facts ("UMF"), Doc. 54-1 at 2-8, and are undisputed unless noted otherwise. The Court
draws all reasonable inferences in favor of the non-moving party, Plaintiff.

[9] Plaintiff disputes this fact insofar as it implies FedEx was *not* responsible for these decisions.
Doc. 61 at 7. The issue of whether FedEx employed Plaintiff is not before the Court, thus this
dispute is immaterial at this stage.

because he would have to backtrack and drive to the same house multiple times. Doc. 54-2 at 31 (Plaintiff's deposition at 114:22-116:1). FedEx responds that "[t]hese tasks were not assigned, encouraged, or necessary." Doc. 66 at 3. Ultimately, whether Plaintiff's early morning tasks were reasonable or necessary to complete the work he was assigned is a dispute of fact. At this point, the Court must resolve all reasonable inferences in favor of the non-moving party and thus cannot accept FedEx's characterization of the work as unreasonable or unnecessary.

Plaintiff also testified that, in the beginning of his employment, "FedEx required that all drivers attended this [weekly safety] meeting" which took place in the terminal and lasted an hour. Doc. 54-2 at 26-27 (Plaintiff Dep. at 96:12-99:6). Defendant disagrees that this weekly meeting existed, Doc. 66 at 4-5, but such a disagreement only creates a dispute of fact, which the Court cannot resolve on summary judgment.

According to Defendant, J&A drivers' pay depended on what route they drove, and J&A Deliveries determined drivers' pay according to the miles and the amount of packages in their areas. UMF 28. A driver with half of Plaintiff's area would be paid half of what Plaintiff was making; whereas, a driver who was delivering twice as many packages qualified for a larger salary. UMF 28. Pay stubs from other J&A Deliveries' drivers show different rates for different routes. UMF 29. During the class period, J&A Deliveries' employees were paid $130, $150, $160, $170, $175, $180, or $190 per day. UMF 29. Plaintiff was paid a higher rate than some other J&A Deliveries' drivers because of his route. UMF 30. According to an affidavit from Josh Strong:

> J&A Deliveries used to pay drivers a flat rate that was based on their specific route (routes I designed for them). Each route had a specific rate based on how long a driver should have taken to complete the route. I considered the amount of driving, number of stops, and volume and types of packages, among other things. I personally have run all of the routes, so I know the workload for each route. In

setting those rates, I considered how much drivers would have made if paid an hourly rate of about $13 to $17 per hour.

Routes had different rates because some routes have a greater workload. A route that should take about 6 hours to complete had a lower rate than a route that would take about 8 hours to complete because it required delivering more packages to more stops. So a driver would be paid $150 a day if he drove one route but $180 per day if he drove a longer route with more driving, stops, and packages.

UMF 31; Doc. 54-3 ¶¶ 11-12 (Strong affidavit).

In response, Plaintiff asserts that he received a fixed daily rate regardless of which specific packages he delivered, the volume of the packages assigned to his route, or the amount of time that he was required to spend waiting at the terminal before being permitted to dispatch each day. Doc. 61 at 29; Doc. 61-1 ¶ 13 (Plaintiff's affidavit). The specific types of packages assigned to Plaintiff's routes as well as the volume of packages would change daily, sometimes drastically. Doc. 61-1 ¶ 7. For example, Plaintiff's workload would increase substantially during peak holiday season. *Id.* But Plaintiff's 2019 pay records show he earned a flat daily rate of $175. Doc. 61 at 10. The work volume grew every year that Plaintiff worked for FedEx. Doc. 61-1 ¶ 7. FedEx does not dispute these facts. *Cf.* Doc. 66 at 4.

B.    Discussion

The NMMWA's premium-overtime provision does not apply to "salespersons or employees compensated upon piecework, flat rate schedules or commission basis." NMSA § 50-4-21(C)(4). Exemptions from the New Mexico Minimum Wage Act are strictly and narrowly construed. *State ex rel. State Labor Comm'r v. Goodwill Indus.*, 1970-NMSC-163, ¶ 6, 478 P.2d 543, 545. Accordingly, courts consider whether an exception "unmistakably" applies. *See id.* ¶ 5.

Defendant previously moved to dismiss and argued that the "day rate" Plaintiff received is the equivalent of a "flat rate" and therefore the NMMWA does not apply to Plaintiff. Doc. 12

at 4-5. The Court denied this motion. The Court first found that New Mexico law does not define

the term "flat rate." Doc. 24 at 6-7. Looking to other sources of law, the Court observed that:

> [A]lthough this payment structure might be most common in the automobile
> industry, it could also be applied to other industries. Another industry could
> fashion a standardized database assigning a number of "flat rate" hours to a
> particular job, and thus introduce a "flat rate schedule" of compensation based on
> that database. . . . [E]very case cited by Defendant that deals with the definition of
> "flat rate schedule" under the New Mexico Minimum Wage Act has either
> assumed, or explicitly held, that such systems are commission based—i.e., the
> payment is per job or per unit, rather than per time worked.
>
> . . . .
>
> [B]ecause an employee's compensation is commission based, the employee who
> is paid based on a flat rate hour does not receive a fixed day rate. Instead, the
> employee receives a percentage of the flat rate dollar assigned to a particular task.
> True, both the employee who delivers FedEx packages and the employee who
> gets paid by the flat rate hour assigned to a task (as opposed to how long the
> employee actually spends on the task) are rewarded for their efficiency. The
> efficient employee will complete the task more quickly than the inefficient
> employee and so will have to work fewer hours for the same pay. But a crucial
> distinction is that the employee who delivers packages for a "day rate" gets the
> same pay every day, regardless of how many packages he delivers that day. In
> contrast, the employee paid by "flat rate" is paid according to the number of flat
> rate hours assigned to a job where the job the employee performs might vary from
> day to day.
>
> A delivery person would be paid by flat rate hour if that person's employer
> assigned a flat rate hour to the delivery of certain packages. Presumably, a
> different flat rate would apply to different packages based on the type of package
> delivered and its destination. Because the flat rate of packages that must be
> delivered varies, so would the employee's pay. Here, it does not appear that
> Plaintiff's employer assigned flat rate hours to the delivery of certain packages or
> to a certain delivery route.

*Id.* at 7-9 (citations omitted).

Defendant moves for summary judgment under this reasoning, arguing that the evidence

shows that Plaintiff's employer *did* assign "flat rate hours" to "a certain delivery route." Doc. 54-

1 at 20-21. According to his testimony, Josh Strong designed routes based on miles driven and

packages delivered, and drivers assigned to different routes were paid at different rates. *Id.* at 21.

Under the logic that a flat rate is a rate per-task, Defendant argues that this per-route payment structure falls under the NMMWA flat rate exception. *Id.*

Plaintiff disputes this characterization, pointing out that, regardless of what Josh Strong intended, "the volume of packages FedEx assigned to Plaintiff (and thus volume of work) changed constantly." Doc. 61 at 23. In other words, although the *route* might have been fixed, the amount of work the route required was not fixed. In this sense, it is not like performing a certain standardized car-repair task, or even cleaning a standardized-size hotel room.

Plaintiff submits evidence, and Defendant does not contest, that Plaintiff received the same pay every day regardless of which packages he delivered or how many packages were assigned to his route. Doc. 61-1 ¶ 13 (Plaintiff's affidavit). In other words, the length of Plaintiff's workday and the amount of work each day differed, but his set daily rate of pay stayed the same. These facts hold true regardless of whether Plaintiff's pay is characterized as "per route" or "per day."

Further, drawing all reasonable factual inferences in favor of Plaintiff, Plaintiff could not reasonably complete his work in less than 40 hours per week. As the Court previously observed:

> The argument against adopting Defendant's interpretation is especially strong where it does not appear that the work at issue could [] reasonably[10] be done in less than 40 hours per week (without breaking too many dishes, making defective widgets, or exceeding the speed limit in an effort to more quickly deliver packages). In such cases, it would be too easy for an employer to circumvent overtime regulations by paying an employee a fixed day rate, regardless of what amount of work awaits them when they arrive to work.

Doc. 24 at 12-13.

---

[10] The Court's previous order incorrectly used the term "not reasonably." As clear from the context of the paragraph, use of the word "not" was a typographical error.

Defendant's argument would also be stronger if there were evidence that an employee had the option of choosing different flat rate schedules depending on the length of a route or the number of packages to be delivered. For instance, assume during the week before Christmas that a route that would normally take 8 hours to complete required 14 hours. An employee might choose during the week before Christmas to accept that route every day for six days straight and, in the process, work an 84-hour week. But, under a true flat-rate schedule, the longer day that consisted of delivering x+y packages the week before Christmas would pay more than the shorter day at other times of the year that consisted of delivering x packages. Here, the evidence is that, regardless of how the workload changed, the rate of pay did not.[11]

Because the Court rejects, for the reasons articulated above, Defendant's argument that Plaintiff worked a flat rate schedule, the Court need not resolve whether Plaintiff's evidence regarding waiting time provides an independent reason to reject Defendant's motion for summary judgment. The Court also need not resolve Defendant's argument that Plaintiff, as an employee paid a flat rate, received at least minimum wage for time spent in New Mexico. Doc. 54-1 at 21. The Court denies Defendant's motion for summary judgment because Plaintiff was not paid a fixed, per-unit rate. Whether it is characterized as per-day or per-route, given evidence that the number of packages to be delivered per-day or per-route greatly varied, those are not standardized "units" as would fall within the term "flat rate" in the NMMWA.

---

[11] The amount of variance permitted among flat-rate work is beyond the scope of this Order. Nonetheless, the Court recognizes that some variance is acceptable. For instance, an employee could be paid a flat rate for painting a compact car, even though some variance exists between the sizes of compact cars. This is different than offering a "flat-rate" for each vehicle required to be painted, where one day a worker might walk in to find a compact car before him and, on another, a bus.

## <u>CONCLUSION</u>

FedEx Ground Package System, Inc.'s Motion For Summary Judgment, Doc. 54, is DENIED.

_____
STEVEN C. YARBROUGH
UNITED STATES MAGISTRATE JUDGE