## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

FERNANDEZ MARTINEZ,

        Plaintiff,

v.                                  Civ. No. 20-1052 SCY/LF

FEDEX GROUND PACKAGE SYSTEM,
INC.,

        Defendant.

## AMENDED MEMORANDUM OPINION AND ORDER
## DENYING MOTION TO DISMISS[1]

Plaintiff Fernandez Martinez brings a putative class action suit against Defendant FedEx Ground Package System, Inc., alleging violations of the New Mexico Minimum Wage Act. In pertinent part, the complaint alleges that Plaintiff and a class of similarly situated employees worked for independent service providers to deliver packages on behalf of Defendant. Plaintiff and the putative class members were paid by the day, rather than by the hour or by package delivered, and regularly worked in excess of 40 hours per week with no premium payments for overtime hours. Defendant moves to dismiss the complaint, arguing that payment of a "day rate" falls within an exception to the Minimum Wage Act for "fixed rate schedules." Defendant also argues that it cannot be held jointly and severally liable with the independent service provider companies for any alleged violations of the Act, because New Mexico has abolished joint and several liability in most situations.

---

[1] The Court enters this Amended Memorandum Opinion and Order because the Court's previous order incorrectly used the term "not reasonably" on page 12 of the slip opinion. *See Martinez v. FedEx Ground Package Sys., Inc*., No. 20cv1052, 2021 WL 1026732, at *6, 2021 U.S. Dist. LEXIS 50101, at *19 (D.N.M. Mar. 17, 2021). As is clear from the context of the paragraph, the use of the word "not" was a typographical error.

The Court finds that "fixed rate schedules," as that term is used in the Act, does not encompass the concept of a day rate. The Court also finds that the complaint does not bring a theory of liability based on joint and several liability. Therefore, the Court DENIES the motion to dismiss.

## **BACKGROUND**

Plaintiff Fernandez Martinez filed this putative Class Action Complaint for Unpaid Wages in federal court on October 12, 2020. Doc. 1 ("Compl.").[2] The complaint alleges that Defendant violated the New Mexico Minimum Wage Act by failing to pay premium wages for overtime hours. Specifically, Plaintiff alleges that FedEx drivers and runners are paid a "day rate" whereby they earn the same amount of money regardless of how many hours they work in a day. *Id.* ¶ 8. This results in employees working more than forty hours per week with no premium payment for their overtime hours. *Id.*

The complaint does not allege that Defendant directly pays the drivers and runners. Instead, Defendant uses intermediaries called "independent service providers" ("ISPs") that employ people as drivers and runners who work uncompensated overtime hours. Compl. ¶¶ 7-8. But, Plaintiff asserts, Defendant is "a controlling employer" and therefore responsible for ensuring its drivers and runners are paid in accordance with New Mexico law. *Id.* The drivers and runners such as Plaintiff typically work full-time and exclusively as FedEx drivers and runners, delivering Defendant's packages to Defendant's customers while wearing FedEx uniforms and driving vehicles bearing FedEx's logos and color scheme. *Id.* ¶ 11. The drivers and runners work out of Defendant-owned and operated terminals located in New Mexico, where

---

[2] Because this matter is before the Court on a motion to dismiss, the Court accepts the relevant facts Plaintiff sets forth in his complaint as true.

Defendant's managers oversee and manage the package delivery operations. *Id.* ¶ 12. The services rendered by Plaintiff and other drivers and runners are integral to Defendant's business because Defendant's business is to pick up and deliver packages. *Id.* ¶ 13. Plaintiff and other drivers and runners are required to perform their delivery and pickup duties pursuant to Defendant's policies and procedures dictated to them both directly by Defendant's managers and indirectly through ISPs. *Id.* ¶ 14. The schedules of the drivers and runners are based on the needs of Defendant's customers. *Id.*

Defendant controls many aspects of the work of the drivers and runners. *Id.* ¶ 15. Defendant requires that the delivery drivers and runners have specific equipment on their vehicles when they perform deliveries for Defendant. *Id.* ¶ 15(a). Defendant requires the delivery drivers and runners to wear a uniform bearing Defendant's logos and color scheme and to maintain personal standards established by Defendant. *Id.* ¶ 15(b). Defendant requires the delivery drivers and runners to place specific signage on their vehicles bearing Defendant's name and logo. *Id.* ¶ 15(c). Defendant assigns the specific packages that the delivery drivers and runners must deliver and dictates when the packages must be delivered. *Id.* ¶ 15(d). Defendant requires the drivers and runners to scan all assigned packages with a specific scanner designated by Defendant upon loading each morning and upon delivery. *Id.* ¶ 15(e). Defendant requires the drivers and runners to begin and end each day at a designated terminal operated by Defendant. *Id.* ¶ 15(f). Customer comments and complaints regarding the drivers' and runners' job performance are made directly to Defendant, who uses its own discretion on what action to take. *Id.* ¶ 15(g). Defendant closely monitors the job performance of the drivers and runners, tracking whether each delivery is "successful" based on Defendant's own standards. *Id.* ¶ 15(h). Defendant has the authority to require its ISPs to terminate the drivers and runners working

under them if Defendant believes they should be terminated. *Id.* ¶ 15(i). When drivers and runners work for different ISPs, or even directly for Defendant, their job duties and the procedures they are required to follow do not differ in any material way. *Id.* ¶ 16.

Drivers and runners are paid fixed "day rates" with no overtime compensation. *Id.* ¶ 17. For example, during the last three years of his employment, Plaintiff worked, on average, approximately 12-18 hours per day, six days per week and was not paid overtime wages for those hours over 40 that he worked each workweek. *Id.* ¶ 18. During the first year of his tenure, Plaintiff worked, on average, approximately 10-12 hours per day, six days per week, with no overtime pay. *Id.*

The Complaint preliminarily defines the class as "all current or former New Mexico FedEx drivers and runners who were paid day rates without overtime compensation." *Id.* ¶ 21. The Complaint brings a single claim for relief under the Minimum Wage Act, NMSA § 50-4-19. Doc. 1 at 7-8. Plaintiff invokes jurisdiction under the federal Class Action Fairness Act, 28 U.S.C. § 1332(d), because the putative class contains at least 100 members, the parties are minimally diverse, and the amount in controversy exceeds $5,000,000 in the aggregate for the class, exclusive of interest and costs. *Id.* ¶ 4.

Defendant filed the present Motion to Dismiss on December 29, 2020. Doc. 12. Defendant moves to dismiss the class action complaint on two grounds: First, that its actions as described in the complaint do not violate New Mexico's minimum wage law; and second, if any violations exist, Defendant is not jointly and severally liable with the independent contractor who actually employs Plaintiff. Plaintiff responded in opposition on January 26, 2021. Doc. 21. Defendant filed its reply on February 15, 2021. Doc. 23. Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings and to enter an order of

judgment. Docs. 16, 17, 19. Briefing is complete and the motion is ready for decision.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss a complaint for failure to state a claim upon which the court can grant relief. "[T]o withstand a Rule 12(b)(6) motion to dismiss, a complaint must contain enough allegations of fact, taken as true, to state a claim to relief that is plausible on its face." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While a complaint does not require detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss, it "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

"A claim is facially plausible when the allegations give rise to a reasonable inference that the defendant is liable." *Mayfield v. Bethards*, 826 F.3d 1252, 1255 (10th Cir. 2016). The court's consideration, therefore, is limited to determining whether the complaint states a legally sufficient claim upon which the court can grant relief. *See Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999). The court is not required to accept conclusions of law or the asserted application of law to the alleged facts. *See Hackford v. Babbitt*, 14 F.3d 1457, 1465 (10th Cir. 1994). Nor is the court required to accept as true legal conclusions that are masquerading as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The court must, however, view a plaintiff's allegations in the light most favorable to him. *Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1280 (10th Cir. 2013).

## DISCUSSION

Defendant argues that it cannot be held liable for its pay practices because those practices comply with the law and it cannot be held liable for the pay practices of another business

because New Mexico has abolished joint and several liability in most situations. The Court rejects both contentions.

## I.     "Flat Rate Schedules" Do Not Encompass the Concept of a Day Rate.

The New Mexico Minimum Wage Act requires employers to pay premium rates for overtime hours worked by employees (i.e., those hours in excess of 40 hours per week). NMSA § 50-4-22(E). The Act, however, does not apply to "salespersons or employees compensated upon piecework, flat rate schedules or commission basis." NMSA § 50-4-21(C)(4). Exemptions from the New Mexico Minimum Wage Act are strictly and narrowly construed. *State ex rel. State Labor Comm'r v. Goodwill Indus.*, 1970-NMSC-163, ¶ 6, 478 P.2d 543, 545. Accordingly, courts consider whether an exception "unmistakably" applies. *See id.* ¶ 5.

Defendant moves to dismiss the single claim in the complaint, arguing that the "day rate" Plaintiff received is the equivalent of a "flat rate" and therefore the Minimum Wage Act does not apply to Plaintiff. Doc. 12 at 4-5. Defendant argues that the dictionary definition of "flat" when used in terms of money demonstrates that it is synonymous with "fixed" and therefore the fixed day rate at issue in this case *is* a flat rate schedule. *Id.* at 6.

Plaintiff responds that courts have consistently understood "flat rate schedules" to mean standardized estimates for jobs. Doc. 21 at 11-12. For example, an automotive shop will pay its employee a certain amount for painting and automotive repair with reference to a centralized database setting forth how much time that job *should* take, regardless of how long the employee actually works. *Klinedinst v. Swift Invs., Inc*., 260 F.3d 1251, 1253 (11th Cir. 2001). "Unlike here where Plaintiff is paid a fixed day rate, the autobody repair workers [may be] paid different 'flat rates' for different types of repair jobs." Doc. 21 at 11 n.4 (citing *Olivo v. Crawford Chevrolet, Inc.*, 2012 WL 12897385, at *1 (D.N.M. Jan. 12, 2012)). So characterized, the term

6

"flat rate" is incompatible with the concept of a delivery person who is paid per day, no matter how many packages they must deliver within that day.

The parties agree that neither the statute nor New Mexico state courts have defined "flat rate schedules." Apparently, the only reference to this provision in New Mexico case law is a 1957 supreme court decision that *declined* to define the term. *Burch v. Foy*, 1957-NMSC-017, ¶ 4, 62 N.M. 219, 222 ("It is further stipulated that the term 'flat rate schedule' used in the Act has a meaning in the automobile repair field. That is the only technical meaning known. It is not known whether this is the only field where a flat rate schedule is used."). Defendant protests that if the New Mexico legislature had meant to confine the term "flat rate schedules" to the automotive industry, it would have said so. Doc. 23 at 6-7. But Plaintiff does not argue that "flat rate schedules" are confined to one particular industry. Rather, Plaintiff argues that "flat rate schedules," as the term is used in this context, are characterized by standardized estimates for jobs and it is within the automotive industry that this term is most often seen. Doc. 21 at 11-12.

Given that neither the New Mexico legislature nor New Mexico state courts have provided guidance about what the term "flat rate schedules" means, the Court looks to other sources for guidance. The federal Department of Labor's Wage and Hour Handbook provides:

> Some auto service garages and car dealerships compensate mechanics and painters on the following basis: the painter or mechanic gets so much a flat rate hour for the work he or she performs. . . . Each job is assigned a certain number of hours for which the customer is charged, regardless of the actual time it takes to perform the job. The employee is given a certain proportion of that charge expressed in terms of so many dollars and cents per flat rate hour rather than in terms of a percentage of the charge to the customer. The dealer does not change the employee's share per flat rate hour if that charge to the customer is changed. In such situations the [agency] will not deny that such payments represent commissions on goods or services for purposes of section 7(i) . . . [s]uch employment shall qualify for exemption under section 7(i) provided all other tests of the exemption are met.

Wage and Hour Handbook, Section 21h04(d), *available at* https://www.dol.gov/agencies/whd/field-operations-handbook/Chapter-21. Two conclusions can be drawn from the Department of Labor's example of how payment for a flat rate hour works. First, although this payment structure might be most common in the automobile industry, it could also be applied to other industries. Another industry could fashion a standardized database assigning a number of "flat rate" hours to a particular job, and thus introduce a "flat rate schedule" of compensation based on that database. As the Department of Labor notes, this would be considered a commission and so could qualify for the commission exception to the FLSA's section 7(a) overtime provision as well as an exemption in New Mexico's Minimum Wage Act.

Likewise, every case cited by Defendant that deals with the definition of "flat rate schedule" under the New Mexico Minimum Wage Act has either assumed, or explicitly held, that such systems are commission based—i.e., the payment is per job or per unit, rather than per time worked. *See Olivo v. Crawford Chevrolet, Inc.*, No. CV 10-782 BB/LFG, 2012 WL 12897385, at *1 (D.N.M. Jan. 12, 2012) ("Pacheco was paid by the job; i.e., he was paid per flat rate or 'flag rate' hour."); *Armijo v. FedEx Ground Package Sys., Inc.*, 405 F. Supp. 3d 1267, 1279 (D.N.M. 2019) (declining to decide what, precisely, "flat rate schedule" means because the payments in question were made per package and per stop, "not based on hours worked," and thus the compensation structure would fall under one or more of these three exceptions in § 50-4-21(C)(4)); *Corman v. JWS of New Mexico, Inc.*, 356 F. Supp. 3d 1148, 1202-03 (D.N.M. 2018) (flat rate "compensation systems are characterized by standardized estimates for jobs"; flat rates "are fixed or unvarying, because the same rate applies to the same task, regardless [of] other factors"); *Casias v. Distribution Mgmt. Corp., Inc.*, No. 11-cv-874 MV/RHS, 2013 WL 12091857, at *5 (D.N.M. Mar. 27, 2013) ("a predetermined fixed wage for each individual

customer pick-up and delivery . . . constitutes a 'piecework' or 'flat rate' compensation structure within the meaning of Section 50-4-21(C)([4])"); *Key v. Butch's Rat Hole & Anchor Serv., Inc.*, No. 17-cv-1171 RB/KRS, 2018 WL 4222392, at *3 (D.N.M. Sept. 5, 2018) ("a set rate per unit of pipe laid . . . meets the definition of piecework or flat rate pay pursuant to § 50-4-21(C)([4])"); *Kerr v. K. Allred Oilfield Servs., LLC*, No. 20-cv-477 WJ/SMV, 2020 WL 5702809, at *2-3 (D.N.M. Sept. 24, 2020) (although there is no clear definition of "flat rate schedule," the case law and the Department of Labor's interpretive guidance tend to indicate that such a system does not encompass a "day rate").

The second conclusion that can be drawn from the Department of Labor's example of a flat rate hour and the existing case law in this District is that, because an employee's compensation is commission based, the employee who is paid based on a flat rate hour does not receive a fixed day rate. Instead, the employee receives a percentage of the flat rate dollar assigned to a particular task. True, both the employee who delivers FedEx packages and the employee who gets paid by the flat rate hour assigned to a task (as opposed to how long the employee actually spends on the task) are rewarded for their efficiency. The efficient employee will complete the task more quickly than the inefficient employee and so will have to work fewer hours for the same pay. But a crucial distinction is that the employee who delivers packages for a "day rate" gets the same pay every day, regardless of how many packages he delivers that day. In contrast, the employee paid by "flat rate" is paid according to the number of flat rate hours assigned to a job where the job the employee performs might vary from day to day.

A delivery person would be paid by flat rate hour if that person's employer assigned a flat rate hour to the delivery of certain packages. Presumably, a different flat rate would apply to different packages based on the type of package delivered and its destination. Because the flat

9

rate of packages that must be delivered varies, so would the employee's pay. *E.g.*, *Armijo*, 405 F. Supp. 3d 1267; *Casias*, 2013 WL 12091857. Here, it does not appear that Plaintiff's employer assigned flat rate hours to the delivery of certain packages or to a certain delivery route. Thus, while it appears that Plaintiff's employer could have adopted a flat rate structure of payment, Plaintiff's allegations describe some other type of pay structure. Compl. ¶ 14 (drivers and runners' schedules are dictated by "the volume of packages that Defendant requires to be delivered" for its same-day delivery guarantee, based on the "needs of Defendant's customers" that day).

Defendant cites no case, and the Court has found no case, that holds that a "flat rate schedule" can be measured per unit of time. A day rate is measured per day, regardless of how many tasks or jobs are assigned within that day, and therefore is different than the per-job or per-task-unit compensation systems held to be "flat rate schedules" in the cases and federal guidance discussed above.

Defendant invokes the canon of statutory interpretation known as *noscitur a sociis* to argue that because § 50-4-21(C)(4)'s other two exemptions—piecework and commission-based compensation—are not confined to a particular industry, like the automotive industry, the Court should not interpret "flat rate schedule" so narrowly. Doc. 23 at 5-6. As the Court has explained, however, a "flat rate schedule" is not exclusive to the automotive industry and so the premise of Defendant's argument fails. Contrary to Defendant's argument, the canon of *noscitur a sociis* actually favors Plaintiff's position. The canon of *noscitur a sociis* says that the legislature is deemed to "group[] . . . words together in a list to invoke [a] common core of meaning." *In re McDaniel*, 973 F.3d 1083, 1103-04 (10th Cir. 2020) (alterations and internal quotation marks omitted); *In re Christopher K.*, 1999-NMCA-157, ¶ 3, 993 P.2d 120, 121 (in the statutory list of

"child, parent, guardian, custodian or counsel," the word "counsel" refers only to counsel for the child and not opposing counsel because "[a]ll the other persons listed . . . are allied exclusively with the child, and the contextual meaning of a word in a statute is often determined by its neighbors"). It is undisputed that "piecework"[3] and "commission basis" in § 50-4-21(C)(4) both refer to compensation systems that are unit or job based, not time based. The interpretation of "flat rate schedule" as being similarly job based thus gives all three terms the same general meaning. To interpret "flat rate" as a "day rate," on the other hand, would give the term nothing in common with its statutory neighbors.

Defendant also argues that the dictionary definition of "flat" means "fixed," and a flat rate is thus the equivalent of a fixed day rate. Doc. 12 at 5-6. Replacing the word "flat" in "flat rate schedule" with the word "fixed," however, does not compel the result Defendant advocates. As set forth above, the part of a flat rate schedule that is fixed is how much the employee receives based on the flat rate hours assigned to a particular job. In other words, if 10 flat rate hours are assigned to a job, the employee gets paid the same, regardless of whether the employee spends 8, 10, or 12 hours to complete the job. But the employee's pay is still based on the completion of a particular job that may change from day to day, as opposed to a set amount every day. One day an employee may complete a job assigned 8 flat rate hours and then the next day complete a different job assigned 10 or 12 flat rate hours. In each instance, the employee's pay for the day's work will differ. Granted, the employee receives a fixed rate for the job—the employee gets a certain amount per hour assigned to the job multiplied by the number of hours assigned to the job, regardless of how long it actually takes the employee to complete the job.

---

[3] "The common definition of piecework. . . is 'work done by the piece and paid at a set rate per unit.'" *Casias*, 2013 WL 12091857, at *5 (quoting Merriam Webster's Collegiate Dictionary, 938 (2003 11th ed.)).

But, although the pay an employee gets for a particular job might be fixed, what job the employee performs from day to day is not.

Moreover, accepting the definition of "flat rate schedule" Defendant advances would require the Court to disregard the New Mexico Supreme Court's mandate to strictly and narrowly construe exemptions to the Act and to only apply an exemption when it unmistakably applies. *See State ex rel. State Labor Comm'r v. Goodwill Indus.*, 1970-NMSC-163, ¶¶ 5-6, 478 P.2d 543, 545. Here, Defendant's interpretation threatens to create a broad exception, an exception so broad that it could swallow the rule. Consider a dishwasher, assembly line worker, or hotel maid that an employer would like to work long hours without having to pay either overtime or on a piecework basis. To accomplish this goal, the employer pays each of these workers a fixed amount per day, regardless of how many dishes they are asked to wash, pieces they are asked to put into widgets, or beds they are asked to make. The number of hours each of these workers might need to work on any given day could change depending on demand (how many people made dinner reservations, how many widgets are needed to meet current demand, or how occupied a hotel will be). In each of these situations an employer could say, "I do not know how many hours you will have to work on any given day. All I know is that you can go home when all the dishes are cleaned, all the widgets are made, or when all the rooms are cleaned." Or, in Defendant's case, when all the packages are delivered. Neither the New Mexico state legislature nor its courts have given any indication that it would define "flat rate schedule" as broadly as Defendant. And, the Court finds that doing so would run counter to the mandate to narrowly construe this term.

The argument against adopting Defendant's interpretation is especially strong where it does not appear that the work at issue could reasonably be done in less than 40 hours per week

(without breaking too many dishes, making defective widgets, or exceeding the speed limit in an effort to more quickly deliver packages). In such cases, it would be too easy for an employer to circumvent overtime regulations by paying an employee a fixed day rate, regardless of what amount of work awaits them when they arrive to work. In the present case, Plaintiff alleges that he always had more than forty hours of work to complete each week. Compl. ¶ 18 (during his first year, Plaintiff averaged 60-72 hours a week; for the next three years, he averaged 72-108 hours per week).

Finally, Defendant attempts to distinguish *Kerr v. K. Allred Oilfield Services, LLC*, a case from this District explicitly holding that a "flat rate schedule" is not a day rate. 2020 WL 5702809, at *2-3. In *Kerr*, the court surveyed the case law and noted that prior case law found violations of the state and federal minimum wage laws where the employees were paid a day rate. *Id.* at *2. The court also found that the interpretive guidance from the federal Department of Labor indicated that a day rate is not a "flat rate schedule." *Id.* at *3. The court concluded by acknowledging that there is no clear definition of "flat rate schedule," but given this legal context, Plaintiff's claim survived a motion to dismiss. *Id.* Defendant argues that this Court should not follow *Kerr* because the *Kerr* court's analysis is not persuasive.

First, Defendant argues that *Kerr* did not *have to* interpret state law, as the plaintiff also brought a federal claim. Doc. 12 at 8; Doc. 23 at 4. That the *Kerr* court did not have to interpret state law, however, does not make the interpretation of state law the court chose to make incorrect. The meaning of the New Mexico Minimum Wage Act was squarely before the court in *Kerr* and the fact that the *Kerr* court could have passed on the issue has no bearing on the soundness of the *Kerr* court's analysis.

Second, Defendant argues that *Kerr* ought to have reached a definite statutory interpretation of the phrase "flat rate schedule" by engaging with the statutory text, rather than acknowledging that the term has no clear definition, viewing the term in context, and then finding that the plaintiff stated a plausible claim for relief. Doc. 12 at 8-9; Doc. 23 at 4. This Court does not agree with Defendant's characterization of the opinion. The *Kerr* court did engage in a statutory interpretation of the Act as a matter of law, and held that a day rate does not fall within the exception for "flat rate schedules." And based on its independent analysis in this case, the Court reaches the same conclusion here. Whatever the precise definition of "flat rate schedules" in § 50-4-21(C)(4), it does not encompass the concept of a fixed day rate that compensates an employee per unit of time worked, without respect to unit of work completed or a standardized estimate of payment per job.

## II.      Plaintiff Does Not Rely on a Theory of Joint and Several Liability.

Defendant also moves to dismiss the complaint on the basis that it cannot be held liable for another employer's violations of the Act because New Mexico has abolished joint and several liability in most circumstances. Doc. 12 at 9-13. Defendant contends that, even if it jointly employs Plaintiff along with the ISPs, it cannot be held jointly liable for the ISPs' pay practices. In response, Plaintiff clarifies that it is not relying on a joint and several liability theory. Doc. 21 at 13. Rather, the complaint alleges that Defendant itself is Plaintiff's employer as defined by the New Mexico Minimum Wage Act. *Id.* (citing Compl. ¶ 8).

Plaintiff's characterization of his own complaint is accurate. The complaint does not invoke the concept of joint and several liability. The complaint alleges that "New Mexico law does not permit FedEx to avoid its compliance obligations by inserting ISPs between it and its drivers/runners and requiring the ISPs to sign the drivers' and runners' paychecks." Compl. ¶ 8. "Under New Mexico law, an 'employer' for overtime purposes is a broadly defined term that

includes individuals and entities far beyond the entity that signs the paychecks." *Id.* Plaintiff's

theory is that, "[s]ince FedEx is the employer of its drivers and runners, it is directly,

individually and strictly liable for any and all unpaid wages and liquidated damages due to the

drivers and runners—regardless of whether other persons or entities may also be liable." *Id.*

The Court agrees with Plaintiff that the basis for the motion to dismiss—no joint and

several liability—is not the relevant legal question presented in the complaint. Instead, the

relevant legal question is "whether Plaintiff has sufficiently alleged that FedEx is a statutory

employer of Plaintiff subject to the obligations of the New Mexico's Minimum Wage Act." Doc.

21 at 13. The motion to dismiss does not grapple with this question, and the Court will not

consider arguments raised for the first time in Defendant's reply brief. Therefore, this portion of

the motion to dismiss is denied on the ground that it is directed at a theory of liability that is not

in the complaint and that Plaintiff has explicitly stated he is not pursing in this case.

## **CONCLUSION**

FedEx Ground's Motion To Dismiss The Class Action Complaint (Doc. 12) is DENIED.

STEVEN C. YARBROUGH
UNITED STATES MAGISTRATE JUDGE